UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALITTA AIR, LLC,

    Plaintiff,                                                  Civil Action No. 12-CV-13554

vs.                                                     HON. BERNARD A. FRIEDMAN

GSBD & ASSOCIATES, LLC,
FIRST INTERNATIONAL EXCHANGE CORP., INC.,
FIRST INTERNATIONAL EXCHANGE GROUP, INC.,
WILLIAM GRAY,
GARTH GOTTSCHALK,
CREE ENTERPRISES, LLC,
JUDITH CECILIA TAITE GOTTSHCALK,
STEPHEN SCOTT WESTMAN,
CYNTHIA WESTMAN,
DHAFIR D. DALALY,
HAMOOD RUNCO & FERGESTROM,
SCOTTFUEL, LLC,
OGM LTD.,
SHELDON SANDWEISS and
MICHAEL T. LYON,

    Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT GSBD & ASSOCIATES, LLC'S MOTION FOR PARTIAL DISMISSAL

This matter is presently before the Court on the motion of defendant GSBD & Associates, LLC for partial dismissal of plaintiff's first amended complaint [docket entry 56]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs.

This case involves a commercial transaction gone awry. Plaintiff Kalitta Air, LLC ("Kalitta") is a cargo airline operating from Ypsilanti, Michigan. In July 2009 Kalitta entered into a Jet Fuel Purchase Agreement ("JFPA") with GSB & Associates, Inc. ("GSB"), now known as

GSBD & Associates, Inc. ("GSBD"), whereby Kalitta would purchase jet fuel from GSB. A copy of the JFPA is attached to the First Amended Complaint ("FAC") as Ex. 1. The essence of the JFPA, and of the Escrow Agreement attached thereto as Ex. A, was that Kalitta would order fuel from GSB, monthly or as needed, and deposit the purchase price into an escrow account. GSB would deliver the fuel to a terminal in New Jersey. When the escrow agent, FIEC, received certain documentation verifying the amount and quality of the fuel GSB had delivered, FIEC was to release the escrowed funds. Gray signed the JFPA and the Escrow Agreement as GSB's managing director; Conrad Kalitta signed both documents as Kalitta's president; and G. Gottschalk signed the Escrow Agreement as FIEC's executive vice-president.

In addition to GSBD itself, the defendants in this matter are Gray (individually and as the trustee of the William Gray Trust), Cree Enterprises, LLC ("Cree") and S. Westman, all allegedly managing members of GSB; G. Gottschalk, allegedly a managing member of GSB and an agent of FIEC; J. Gottschalk, allegedly the managing member of Cree; FIEC and its alleged alter ego, FIEG; Dhafir Dalaly, allegedly the managing member of FIEC; Hamood, Runco & Fergestrom ("HRF"), a law firm whose client trust account for FIEC served initially as the escrow account at issue in this case[1]; and True Gem Co., C. Westman, Scottfuel, LLC, OGM, Ltd., Sheldon Sandweiss and Michael T. Lyon, allegedly all recipients of a portion of the improperly disbursed escrow funds. *See* FAC ¶¶ 3-17.

Kalitta alleges, in short, that it paid far more into the escrow account than it received in jet fuel and that defendants perpetrated an elaborate scam to divert and steal the difference of

---

[1] On September 17, 2009, the parties amended the Escrow Agreement and changed the escrow account to one held by FIEC at JPMorgan Chase. *See* FAC, Ex. 1, pp. 19-20.

approximately $4.7 million. Plaintiff alleges, among other things, that the escrow agent released escrowed funds without first receiving required documentation; that GSB delivered far less fuel than plaintiff had ordered and paid for; that a GSB employee created fake invoices to convince plaintiff that plaintiff's funds were being used to purchase fuel from a third-party; and that the escrow agent transferred hundreds of thousands and perhaps millions of dollars from the escrow account to various defendants (e.g., GSB, FIEC, Gray and his trust, G. Gottschalk, Dalaly, Cree, S. Westman, Sandweiss, C. Westman, OGM, True Gem and Lyon) and third parties (e.g., KeroJet, a bank in Lithuania, Dresden Bank, an individual in Russia, and an entity in Abu Dhabi) none of whom or which had anything to do with purchasing or supplying jet fuel for plaintiff. *See* FAC ¶¶ 45-55.

The FAC asserts ten claims. Count I is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), against Gray, Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Count II is a claim for statutory conversion under Mich. Comp. Laws § 600.2919(A) against Gray, G. Gottschalk, J. Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Counts III and IV are claims for fraud and fraud in the inducement against Gray, G. Gottschalk, S. Westman, Cree, Dalaly, FIEC, FIEG and HRF. Count V is a claim for breach of contract against GSBD, FIEC and FIEG. Count VI is a claim for common law conversion against GSBD, Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel, Dalaly, FIEC, FIEG and HRF. Count VII is a claim for breach of fiduciary duty against Dalaly, FIEC, FIEG and HRF. Count VIII is a claim for common law conspiracy against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel, Dalaly, FIEC, FIEG, HRF, and GSBD. Count IX is a claim for common law concert of action against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, Dalaly, FIEC, FIEG, HRF, and GSBD. And Count X is a claim

against all defendants for certain equitable relief.

In addition, FIEC, FIEG and Dalaly ("the Dalaly parties") have filed a cross claim[2] against G. Gottschalk, J. Gottschalk, GSBD, Gray and the Gray Trust, asserting a RICO claim. The Delaly parties allege that the cross claim defendants perpetrated the fraud against plaintiff as alleged in the complaint (but without the Delaly parties' knowledge) by, among other things, "deceiving FIEC into unwittingly participating in the transfer of funds belonging to the Plaintiff in this matter." Cross Claim ¶ 11(b).

### *Defendant GSBD'S Motion for Partial Dismissal of Plaintiff's FAC*

Defendant GSBD seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of all claims asserted against it except the breach of contract claim (i.e., Counts II, III, IV, VI, VII, VIII, IX and X). In deciding a motion under this rule, the Court must

> "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

---

[2] It is unclear whether this cross claim is filed by FIEC alone (as indicated in the caption, which identifies FIEC as the "Cross Claim Plaintiff") or by the Delay parties (as indicated in the body of this pleading on pages 2, 30, 31 and 33).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

GSBD first seeks dismissal of plaintiff's claims for statutory conversion (Count II) and common law conversion (Count VI)[3] on the grounds that (1) "GSB is not alleged to have transferred or received any of the Escrow Amounts," and (2) plaintiff's remedy lies in contract, not tort. The Court rejects these arguments for the reasons indicated in plaintiff's response. The Michigan Court of Appeals has stated:

> Common-law conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Lawsuit Fin., LLC v. Curry*, 261 Mich.App 579, 591; 683 NW2d 233 (2004) (quotation omitted); see also *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App 94, 111; 593 NW2d 595 (1999). Therefore, there are three elements to a common-law conversion claim: (1) a distinct act of dominion; (2) wrongfully exerted; and (3) over another's personal property. The act is wrongful when it is inconsistent with the ownership rights of another. *Check Reporting Servs., Inc. v. Mich. Nat'l Bank–Lansing*, 191 Mich.App 614, 626; 478 NW2d 893 (1991). Statutory conversion is found at MCL 600.2919a, which prohibits but does not define "conversion." "When a statute does not define a term, we will construe the term according to its common and approved usage." *Nelson v. Grays*, 209 Mich.App 661, 664; 531 NW2d 826 (1995). "A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v. Focus Hope, Inc.*, 482 Mich. 269, 276; 753 NW2d 207 (2008). Therefore, the common-law definition defines both common-law and statutory conversion.

*Victory Estates, L.L.C. v. NPB Mortgage, L.L.C.*, 2012 WL 6913826, at *2 (Mich. App. Nov. 20,

---

[3] In Count II plaintiff alleges that various defendants, including Gray, "either withdrew the deposited funds and converted, stole or embezzled them to their own use, or, alternatively, received, possessed, concealed, or aided in the concealment of the wrongfully withdrawn funds, . . ." FAC ¶ 92. In Count VI plaintiff alleges that various defendants, including Gray, "exerted a distinct act of dominion over Kalitta's escrowed funds, for the wrongful benefit of themselves and others, by wrongfully releasing, converting, embezzling, dissipating and distributing those funds, without proper authorization and without fulfilling the required conditions and obligations." *Id.* ¶ 156.

2012) (footnote omitted).  In the present case, the statutory and common law conversion claims are sufficiently pled.  *See* FAC ¶¶ 92-94, 156-57.  Further, even if plaintiff must eventually choose between suing on the contract or for conversion, it is not precluded from asserting both claims at the pleading stage.  *See* Fed. R. Civ. P. 8(d)(3).

GSBD next seeks dismissal of plaintiff's claim for fraud in the inducement (Count III).  "[I]n general, actionable fraud must be predicated on a statement relating to a past or an existing fact, [but] Michigan also recognizes fraud in the inducement.  Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon."  *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995).  The FAC sufficiently states such a claim in ¶¶ 97-107.  Defendant argues this claim fails because any representations it may have made are rendered inactionable by the merger/integration clauses of the fuel purchase and escrow agreements.  The Michigan Court of Appeals rejected this argument in *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243-47 (2006).  This claim may proceed.

Defendant next seeks dismissal of plaintiff's fraud claim (Count IV) on the grounds that the alleged statements and actions either are not attributable to GSBD, did not cause plaintiff any injury, or occurred "pre-contract and [were] therefore nullified by the integration/merger clause."  Def.'s Br. at 9.  "'The general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'"  *Hi-Way Motor Co. v.*

*Int'l Harvester Co.,*

398 Mich. 330, 336 (1976), *quoting Candler v. Heigho*, 208 Mich. 115, 121 (1919). The FAC sufficiently states such a claim in ¶¶ 109-28. Defendant's arguments should be raised, if at all, in the context of a motion for summary judgment, or at trial.

Defendant next seeks dismissal of plaintiff's claim for breach of fiduciary duty (Count VII) on the grounds that it did not have a fiduciary relationship with, and owed no fiduciary duty to, plaintiff because the relationship was governed by contract and only the escrow agent owed plaintiff a fiduciary duty. The Court rejects these arguments for the reasons stated in plaintiff's response brief. Whether a fiduciary relationship exists cannot be determined on the pleadings but depends on all of the circumstances of the parties' dealings with one another and must be fleshed out in discovery. The claim is adequately stated in ¶¶ 160-65 of the FAC and it may proceed.

Defendant next seeks dismissal of plaintiff's claims for common law conspiracy (Count VIII) and concert of action (Count IX) on the grounds that (1) plaintiff does not allege that GSBD committed a crime, (2) any pre-contract statements "were negated by the integration/merger clauses," (3) plaintiff's only viable claim is for breach of contract, and (4) "concrete allegations about the alleged conspiracy" are lacking. Def.'s Br. at 11-12. The Michigan Court of Appeals recently explained "civil conspiracy" as follows:

> The elements of civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means. *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App 300, 313; 486 NW2d 351 (1992). A civil conspiracy claim is not actionable by itself. Instead, there must be a separate, actionable tort underlying the conspiracy. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 257 Mich.App 365, 384; 670 NW2d 569 (2003) *aff'd* 472 Mich. 91 (2005). And, while the underlying tort may sound in law or equity, *Detroit Bd. of Ed. v. Celotex Corp.* (On Remand), 196

> Mich.App 694, 713; 493 NW2d 513 (1992), "[t]he law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages[,]" *Roche v. Blair*, 305 Mich. 608, 613–614; 9 NW2d 861 (1943). (Emphasis added.) This means that "[t]he conspiracy standing alone without the commission of acts causing damage w[ill] not be actionable ... [because] [t]he cause of action does not result from the conspiracy but from the acts done." *Id.* at 614. (Emphasis added.)

*Deputy Sheriffs Ass'n of Mich. v. State of Mich.*, 2013 WL 1223184, at *12 (Mich. App. Mar. 26, 2013). In the present case, plaintiff sufficiently alleges a civil conspiracy in ¶¶ 167-71 of the FAC. Plaintiff need not allege that GSBD committed any crimes, only that it committed an unlawful (i.e., tortious) act, which clearly is alleged. Since plaintiff's burden at the pleading stage is to allege simply that "defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed," *Abel v. Eli Lilly and Co.*, 418 Mich. 311, 338 (1984), the claim in the present case is sufficiently stated and may proceed. Defendant's arguments go more to the proofs than the allegations and should be raised at the appropriate time.

Finally, defendant seeks dismissal of Count X (entitled "equitable relief in the form of unjust enrichment, restitution, constructive trust and accounting") on the grounds that "there is no claim for unjust enrichment when there exists a valid contract covering the same subject matter." Def.'s Br. at 12. The Court rejects this argument for the reasons stated above. Defendant also argues is was not unjustly enriched. This argument challenges the proofs, not the allegations. Accordingly,

IT IS ORDERED that GSBD's motion for partial dismissal [docket entry 56] of the FAC is denied.

Dated: June 27, 2013  
      Detroit, Michigan

S/Bernard A. Friedman_____  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE