UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALITTA AIR, LLC,

    Plaintiff,                                            Civil Action No. 12-CV-13554

vs.                                                   HON. BERNARD A. FRIEDMAN

GSBD & ASSOCIATES, LLC,
FIRST INTERNATIONAL EXCHANGE CORP., INC.,
FIRST INTERNATIONAL EXCHANGE GROUP, INC.,
WILLIAM GRAY,
GARTH GOTTSCHALK,
CREE ENTERPRISES, LLC,
JUDITH CECILIA TAITE GOTTSHCALK,
STEPHEN SCOTT WESTMAN,
CYNTHIA WESTMAN,
DHAFIR D. DALALY,
HAMOOD RUNCO & FERGESTROM,
SCOTTFUEL, LLC,
OGM LTD.,
SHELDON SANDWEISS and
MICHAEL T. LYON,

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION OF DEFENDANT CREE ENTERPRISES, LLC TO DISMISS

This matter is presently before the Court on the motion of defendant Cree Enterprises, LLC ("Cree") for dismissal of plaintiff's first amended complaint [docket entry 63]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs.

This case involves a commercial transaction gone awry. Plaintiff Kalitta Air, LLC ("Kalitta") is a cargo airline operating from Ypsilanti, Michigan. In July 2009 Kalitta entered into a Jet Fuel Purchase Agreement ("JFPA") with GSB & Associates, Inc. ("GSB"), now known as

GSBD & Associates, Inc. ("GSBD"), whereby Kalitta would purchase jet fuel from GSB. A copy of the JFPA is attached to the First Amended Complaint ("FAC") as Ex. 1. The essence of the JFPA, and of the Escrow Agreement attached thereto as Ex. A, was that Kalitta would order fuel from GSB, monthly or as needed, and deposit the purchase price into an escrow account. GSB would deliver the fuel to a terminal in New Jersey. When the escrow agent, FIEC, received certain documentation verifying the amount and quality of the fuel GSB had delivered, FIEC was to release the escrowed funds. Gray signed the JFPA and the Escrow Agreement as GSB's managing director; Conrad Kalitta signed both documents as Kalitta's president; and G. Gottschalk signed the Escrow Agreement as FIEC's executive vice-president.

In addition to GSBD itself, the defendants in this matter are Gray (individually and as the trustee of the William Gray Trust), Cree, and S. Westman, all allegedly managing members of GSB; G. Gottschalk, allegedly a managing member of GSB and an agent of FIEC; J. Gottschalk, allegedly the managing member of Cree; FIEC and its alleged alter ego, FIEG; Dhafir Dalaly, allegedly the managing member of FIEC; Hamood, Runco & Fergestrom ("HRF"), a law firm whose client trust account for FIEC served initially as the escrow account at issue in this case[1]; and True Gem Co., C. Westman, Scottfuel, LLC, OGM, Ltd., Sheldon Sandweiss and Michael T. Lyon, allegedly all recipients of a portion of the improperly disbursed escrow funds. *See* FAC ¶¶ 3-17.

Kalitta alleges, in short, that it paid far more into the escrow account than it received in jet fuel and that defendants perpetrated an elaborate scam to divert and steal the difference of approximately $4.7 million. Plaintiff alleges, among other things, that the escrow agent released

---

[1] On September 17, 2009, the parties amended the Escrow Agreement and changed the escrow account to one held by FIEC at JPMorgan Chase. *See* FAC, Ex. 1, pp. 19-20.

escrowed funds without first receiving required documentation; that GSB delivered far less fuel than plaintiff had ordered and paid for; that a GSB employee created fake invoices to convince plaintiff that plaintiff's funds were being used to purchase fuel from a third-party; and that the escrow agent transferred hundreds of thousands and perhaps millions of dollars from the escrow account to various defendants (e.g., GSB, FIEC, Gray and his trust, G. Gottschalk, Dalaly, Cree, S. Westman, Sandweiss, C. Westman, OGM, True Gem and Lyon) and third parties (e.g., KeroJet, a bank in Lithuania, Dresden Bank, an individual in Russia, and an entity in Abu Dhabi) none of whom or which had anything to do with purchasing or supplying jet fuel for plaintiff. *See* FAC ¶¶ 45-55.

The FAC asserts ten claims. Count I is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962© and (d), against Gray, Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Count II is a claim for statutory conversion under Mich. Comp. Laws § 600.2919(A) against Gray, G. Gottschalk, J. Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Counts III and IV are claims for fraud and fraud in the inducement against Gray, G. Gottschalk, S. Westman, Cree, Dalaly, FIEC, FIEG and HRF. Count V is a claim for breach of contract against GSBD, FIEC and FIEG. Count VI is a claim for common law conversion against GSBD, Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel, Dalaly, FIEC, FIEG and HRF. Count VII is a claim for breach of fiduciary duty against Dalaly, FIEC, FIEG and HRF. Count VIII is a claim for common law conspiracy against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel, Dalaly, FIEC, FIEG, HRF, and GSBD. Count IX is a claim for common law concert of action against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, Dalaly, FIEC, FIEG, HRF, and GSBD. And Count X is a claim against all defendants for certain equitable relief.

In addition, FIEC, FIEG and Dalaly ("the Dalaly parties") have filed a cross claim[2] against G. Gottschalk, J. Gottschalk, GSBD, Gray and the Gray Trust, asserting a RICO claim. The Delay parties allege that the cross claim defendants perpetrated the fraud against plaintiff as alleged in the complaint (but without the Delay parties' knowledge) by, among other things, "deceiving FIEC into unwittingly participating in the transfer of funds belonging to the Plaintiff in this matter." Cross Claim ¶ 11(b).

*Defendant Cree's Motion for Dismissal of Plaintiff's FAC*

Defendant Cree seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of all claims asserted against it (i.e., Counts I, II, III, IV, VI, VIII, IX and X). In deciding a motion under this rule, the Court must

> "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

---

[2] It is unclear whether this cross claim is filed by FIEC alone (as indicated in the caption, which identifies FIEC as the "Cross Claim Plaintiff") or by the Delay parties (as indicated in the body of this pleading on pages 2, 30, 31 and 33).

Cree first argues that the RICO claim should be dismissed because the FAC does not sufficiently allege a pattern of racketeering activity, which is a required element under 18 U.S.C. § 1962(c). It argues the FAC does not sufficiently allege either a "closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition," as required by *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006), to allege a RICO pattern. Cree also argues that the FAC does not sufficiently allege any involvement by Cree and that plaintiff could not have relied on any representations made before plaintiff entered into the JFPA or the escrow agreement because those agreements have merger and integration clauses.

The Court need not address all of Cree's arguments because the first – plaintiff's failure to sufficiently allege a "pattern of racketeering activity" – persuasively disposes of the RICO claim. "[T]o state a RICO claim, [plaintiff] must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon* at 723, *quoting Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). As explained by the court of appeals in *Moon*, a RICO pattern

> consist[s] of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1).
>
> \*   \*   \*
>
> Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because § 1961(5) "assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *H.J.*, the Supreme Court held that "the term pattern itself requires the showing of a relationship between the predicates and of the threat of

> continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* at 239, 109 S.Ct. 2893 (internal citations omitted). "Continuity and relationship constitute two analytically distinct prongs of the pattern requirement." *Vild v. Visconsi*, 956 F.2d 560, 566 (6th Cir.1992), *cert. denied*, 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59 (1992).

465 F.3d at 723-24 (emphasis in original).

Predicate acts are "related" for RICO purposes if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 724, *quoting H.J., Inc.*, 492 U.S. at 240. The predicate acts must also have sufficient "continuity," meaning they must represent "either . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Moon*, 465 F.3d at 724, *quoting H.J., Inc.*, 492 U.S. at 241. To allege "closed period" continuity, plaintiff must show that the predicate acts took place "over a substantial period of time" because RICO is concerned with "long-term criminal conduct." *Moon*, 465 F.3d at 724, 726, *quoting H.J., Inc.*, 492 U.S. at 242. To allege "open-ended continuity," plaintiff must "plead[] facts suggesting the threat of continued racketeering activities projecting into the future." *Moon*, 465 F.3d at 726. This may be plead "through facts showing 'a distinct threat of long-term racketeering activity,' or by showing 'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Moon*, 465 F.3d at 727, *quoting H.J., Inc.*, 492 U.S. at 242.

In the present case, plaintiff has alleged a sufficient number of related predicate acts, but it has not sufficiently alleged continuity to satisfy the pattern element of a RICO claim. A closed-ended period of continuity is not alleged because the predicate acts occurred over a relatively short period of time and because they all relate to a single fraudulent scheme. The first alleged

predicate act occurred on January 12, 2009, when Gray allegedly made false representations during a telephone call with plaintiff's general counsel.  *See* FAC ¶ 22.  The last alleged predicate act occurred on May 27, 2010, when a wire transfer emptied the escrow account.  *See id.* ¶ 75.  While

> there are no rigid rules regarding what amounts to "a substantial period of time," racketeering activity lasting only "a few weeks or months and threatening no future criminal conduct" is insufficient. *Id.* at 242, 109 S.Ct. 2893; *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.1994), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994)  (predicate acts over 17 months did not satisfy the closed period analysis); *Vild*, 956 F.2d at 569 (predicate acts over six or seven months not sufficient under closed-period analysis).

*Moon*, 465 F.3d at 725.  In *Moon* the court of appeals found that continuity was not sufficiently alleged although the predicate acts occurred over a period of two and one-half years:

> [E]ven if the racketeering activity lasted for two-and-a-half years, as Moon insists, facts establishing a closed period of continuity are still lacking. Moon has pleaded that the Defendants embarked upon a coordinated scheme to wrongfully terminate his workers' compensation benefits. All of the predicate acts-the mailing of the Notice and Second Notice cutting off his benefits and the mailing of Dr. Ray's fraudulent medical report-were keyed to Defendants' single objective of depriving Moon of his benefits. No other schemes, purposes, or injuries are alleged, and there are no facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating Moon's benefits. In circumstances such as these, the purported racketeering activity does not bear the markings of the "long-term criminal conduct" about which "Congress was concerned" when it enacted RICO. *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

*Moon*, 465 F.3d at 725-26.  The same line of reasoning has led courts routinely to dismiss RICO claims for failing to sufficiently allege continuity when the predicate acts have taken place over a similarly limited period of time.  *See Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 2012 WL 933289, at **8-9 (E.D. Mich. Mar. 20, 2012) (single scheme perpetrated over an eight-month period

7

deemed insufficient); *Bocanegra v. Stacey*, 2011 WL 4448979, at *5 (E.D. Mich. Sept. 26, 2011) (10 months); *Douglas v. Ratliff*, 2009 WL 3378672, at *5 (S.D. Ohio Oct. 20, 2009) (13-1/2 months); *Mangrum v. Kebede*, 2006 WL 3151546, *4 (W.D. Tenn. Nov 1, 2006) (11 months). Similarly, no closed-ended continuity is alleged in the present case, which involved a single fraudulent scheme and a single victim that was carried out over at most a 16-month period.

Nor does the complaint in the present case allege open-ended continuity, i.e., a distinct threat of long-term racketeering activity." *H.J., Inc.*, 492 U.S. at 242. Rather, just as in *Moon* and the other cases cited above, the scheme alleged in the present case was a "one shot deal." Defendants allegedly conspired to trick plaintiff into depositing large sums of money into the escrow account to purchase jet fuel and then diverted a portion of the funds to themselves and third parties. Having been carried out, the scheme is over and there is no plausible threat of on-going wire fraud, mail fraud or other racketeering activity. That is, plaintiff alleges defendants perpetrated

> an inherently terminable scheme—a pattern of racketeering activity with a built-in ending point—that has prevented this court from finding open-ended continuity in the past. *Vemco*, 23 F.3d at 134 (finding no open-ended continuity where only a single scheme to defraud one plaintiff the cost of one paint system was pled); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir.1992) (finding the plaintiff had failed to plead open-ended continuity when "the acts alleged amount[ed] at best to a breach of contract with a single customer"); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir.1991) (finding that there was no open-ended continuity because the defendant's fraudulent scheme to sell nineteen lots of land was "an inherently short-term affair" that would end once the lots were sold).

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 410-11 (6th Cir. 2012). As in these other cases, the scheme in the present case had a single victim and a "built-in ending point," namely, when the escrow account was depleted.

For these reasons, the Court concludes that plaintiff has failed to allege a pattern of

8

racketeering activity. Defendant's motion to dismiss the complaint as to Count I shall therefore be granted.

Cree next seeks dismissal of plaintiff's claims for statutory conversion (Count II) and common law conversion (Count VI)[3] on the grounds that (1) plaintiff does not allege that Cree has or received any of the escrowed funds, and (2) plaintiff's remedy lies in contract, not tort. The Court rejects these arguments for the reasons indicated in plaintiff's response. The Michigan Court of Appeals has stated:

> Common-law conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Lawsuit Fin., LLC v. Curry*, 261 Mich.App 579, 591; 683 NW2d 233 (2004) (quotation omitted); see also *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App 94, 111; 593 NW2d 595 (1999). Therefore, there are three elements to a common-law conversion claim: (1) a distinct act of dominion; (2) wrongfully exerted; and (3) over another's personal property. The act is wrongful when it is inconsistent with the ownership rights of another. *Check Reporting Servs., Inc. v. Mich. Nat'l Bank–Lansing*, 191 Mich.App 614, 626; 478 NW2d 893 (1991). Statutory conversion is found at MCL 600.2919a, which prohibits but does not define "conversion." "When a statute does not define a term, we will construe the term according to its common and approved usage." *Nelson v. Grays*, 209 Mich.App 661, 664; 531 NW2d 826 (1995). "A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v. Focus Hope, Inc.*, 482 Mich. 269, 276; 753 NW2d 207 (2008). Therefore, the common-law definition defines both common-law and statutory conversion.

---

[3] In Count II plaintiff alleges that various defendants, including Cree, "either withdrew the deposited funds and converted, stole or embezzled them to their own use, or, alternatively, received, possessed, concealed, or aided in the concealment of the wrongfully withdrawn funds, . . ." FAC ¶ 92. In Count VI plaintiff alleges that various defendants, including Cree, "exerted a distinct act of dominion over Kalitta's escrowed funds, for the wrongful benefit of themselves and others, by wrongfully releasing, converting, embezzling, dissipating and distributing those funds, without proper authorization and without fulfilling the required conditions and obligations." *Id.* ¶ 156.

*Victory Estates, L.L.C. v. NPB Mortgage, L.L.C.*, 2012 WL 6913826, at *2 (Mich. App. Nov. 20, 2012) (footnote omitted).  In the present case, the statutory and common law conversion claims are sufficiently pled.  *See* FAC ¶¶ 92-94, 156-57.  Further, plaintiff is not precluded from suing Cree for conversion merely because it is suing other defendants for breach of contract.

Cree next seeks dismissal of plaintiff's claim for fraud in the inducement (Count III).  "[I]n general, actionable fraud must be predicated on a statement relating to a past or an existing fact, [but] Michigan also recognizes fraud in the inducement. Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon."  *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995).  The FAC sufficiently states such a claim in ¶¶ 97-107.  Defendant argues this claim fails because any representations Cree may have made are rendered inactionable by the merger/integration clauses of the fuel purchase and escrow agreements.  The Michigan Court of Appeals rejected this argument in *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243-47 (2006).  This claim may proceed.

Defendant next seeks dismissal of plaintiff's fraud claim (Count IV) on the grounds that the alleged statements and actions either are not attributable to Cree, did not cause plaintiff any injury, or occurred "pre-contractual and [were] therefore nullified by the integration/merger clause."  Def.'s Br. at 13-14.  "'The general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'"  *Hi-Way Motor Co. v. Int'l Harvester*

10

*Co.,*

398 Mich. 330, 336 (1976), *quoting Candler v. Heigho*, 208 Mich. 115, 121 (1919). The FAC sufficiently states such a claim in ¶¶ 109-28. Defendant's arguments should be raised, if at all, in the context of a motion for summary judgment, or at trial.

Defendant next seeks dismissal of plaintiff's claims for common law conspiracy (Count VIII) and concert of action (Count IX) on the grounds that (1) civil conspiracy and concert of action are not themselves causes of action, (2) the FAC does not allege that Cree committed any crimes, and (3) the conspiracy is not sufficiently alleged. The Michigan Court of Appeals recently explained "civil conspiracy" as follows:

> The elements of civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means. *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App 300, 313; 486 NW2d 351 (1992). A civil conspiracy claim is not actionable by itself. Instead, there must be a separate, actionable tort underlying the conspiracy. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 257 Mich.App 365, 384; 670 NW2d 569 (2003) *aff'd* 472 Mich. 91 (2005). And, while the underlying tort may sound in law or equity, *Detroit Bd. of Ed. v. Celotex Corp.* (On Remand), 196 Mich.App 694, 713; 493 NW2d 513 (1992), "[t]he law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages[,]" *Roche v. Blair*, 305 Mich. 608, 613–614; 9 NW2d 861 (1943). (Emphasis added.) This means that "[t]he conspiracy standing alone without the commission of acts causing damage w[ill] not be actionable ... [because] [t]he cause of action does not result from the conspiracy but from the acts done." *Id*. at 614. (Emphasis added.)

*Deputy Sheriffs Ass'n of Mich. v. State of Mich.*, 2013 WL 1223184, at *12 (Mich. App. Mar. 26, 2013). In the present case, plaintiff sufficiently alleges a civil conspiracy in ¶¶ 167-71 of the FAC. Plaintiff need not allege that Cree committed any crimes, only that it committed an unlawful (i.e.,

11

tortious) act, which clearly is alleged. Since plaintiff's burden at the pleading stage is to allege simply that "defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed," *Abel v. Eli Lilly and Co.*, 418 Mich. 311, 338 (1984), the claim in the present case is sufficiently stated and may proceed. Defendant's arguments go more to the proofs than the allegations and should be raised at the appropriate time.

Finally, defendant seeks dismissal of Count X (entitled "equitable relief in the form of unjust enrichment, restitution, constructive trust and accounting") on the grounds that "there is no claim for unjust enrichment when there exists a valid contract covering the same subject matter." Def.'s Br. at 16. As noted above, this argument fails because Cree is not a party to the contracts. Therefore this claim may not be dismissed on these grounds. Cree also argues the requested injunctive relief is unavailable because Cree does not possess any money belonging to plaintiff. This, too, is a matter to be fleshed out during discovery. Accordingly,

IT IS ORDERED that defendant Cree's motion [docket entry 63] to dismiss the FAC is granted in part and denied in part as follows: the motion is granted as to Count I but otherwise denied.


                                              S/ Bernard A. Friedman_____
Dated: June 27, 2013                          BERNARD A. FRIEDMAN
       Detroit, Michigan                      SENIOR UNITED STATES DISTRICT JUDGE