UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALITTA AIR, LLC,

    Plaintiff,                                          Civil Action No. 12-CV-13554

vs.                                                   HON. BERNARD A. FRIEDMAN

GSBD & ASSOCIATES, LLC,
FIRST INTERNATIONAL EXCHANGE CORP., INC.,
FIRST INTERNATIONAL EXCHANGE GROUP, INC.,
WILLIAM GRAY,
GARTH GOTTSCHALK,
CREE ENTERPRISES, LLC,
JUDITH CECILIA TAITE GOTTSHCALK,
STEPHEN SCOTT WESTMAN,
CYNTHIA WESTMAN,
DHAFIR D. DALALY,
HAMOOD RUNCO & FERGESTROM,
SCOTTFUEL, LLC,
OGM LTD.,
SHELDON SANDWEISS and
MICHAEL T. LYON,

    Defendants.

_____/

**OPINION AND ORDER GRANTING THE MOTIONS OF CROSSCLAIM
DEFENDANTS GRAY AND GSBD TO DISMISS THE CROSSCLAIM**

This matter is presently before the Court on the motions of crossclaim defendants William Gray ("Gray") and GSBD & Associates, LLC ("GSBD") for dismissal of the crossclaim filed against them by crossclaim plaintiffs First International Exchange Corp., First International Exchange Group, Inc., and Dhafir Dalaly ("the Dalaly parties") [docket entries 57 and 58].  The Dalaly parties have filed a response in opposition and Gray has filed a reply.  Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs.

This case involves a commercial transaction gone awry.  Plaintiff Kalitta Air, LLC

("Kalitta") is a cargo airline operating from Ypsilanti, Michigan. In July 2009 Kalitta entered into a Jet Fuel Purchase Agreement ("JFPA") with GSB & Associates, Inc. ("GSB"), now known as GSBD & Associates, Inc. ("GSBD"), whereby Kalitta would purchase jet fuel from GSB. A copy of the JFPA is attached to the First Amended Complaint ("FAC") as Ex. 1. The essence of the JFPA, and of the Escrow Agreement attached thereto as Ex. A, was that Kalitta would order fuel from GSB, monthly or as needed, and deposit the purchase price into an escrow account. GSB would deliver the fuel to a terminal in New Jersey. When the escrow agent, FIEC, received certain documentation verifying the amount and quality of the fuel GSB had delivered, FIEC was to release the escrowed funds. Gray signed the JFPA and the Escrow Agreement as GSB's managing director; Conrad Kalitta signed both documents as Kalitta's president; and G. Gottschalk signed the Escrow Agreement as FIEC's executive vice-president.

In addition to GSBD itself, the defendants in this matter are Gray (individually and as the trustee of the William Gray Trust), Cree Enterprises, LLC ("Cree") and S. Westman, all allegedly managing members of GSB; G. Gottschalk, allegedly a managing member of GSB and an agent of FIEC; J. Gottschalk, allegedly the managing member of Cree; FIEC and its alleged alter ego, FIEG; Dhafir Dalaly, allegedly the managing member of FIEC; Hamood, Runco & Fergestrom ("HRF"), a law firm whose client trust account for FIEC served initially as the escrow account at issue in this case[1]; and True Gem Co., C. Westman, Scottfuel, LLC, OGM, Ltd., Sheldon Sandweiss and Michael T. Lyon, allegedly all recipients of a portion of the improperly disbursed escrow funds. *See* FAC ¶¶ 3-17.

---

[1] On September 17, 2009, the parties amended the Escrow Agreement and changed the escrow account to one held by FIEC at JPMorgan Chase. *See* FAC, Ex. 1, pp. 19-20.

Kalitta alleges, in short, that it paid far more into the escrow account than it received in jet fuel and that defendants perpetrated an elaborate scam to divert and steal the difference of approximately $4.7 million.  Plaintiff alleges, among other things, that the escrow agent released escrowed funds without first receiving required documentation; that GSB delivered far less fuel than plaintiff had ordered and paid for; that a GSB employee created fake invoices to convince plaintiff that plaintiff's funds were being used to purchase fuel from a third-party; and that the escrow agent transferred hundreds of thousands and perhaps millions of dollars from the escrow account to various defendants (e.g., GSB, FIEC, Gray and his trust, G. Gottschalk, Dalaly, Cree, S. Westman, Sandweiss, C. Westman, OGM, True Gem and Lyon) and third parties (e.g., KeroJet, a bank in Lithuania, Dresden Bank, an individual in Russia, and an entity in Abu Dhabi) none of whom or which had anything to do with purchasing or supplying jet fuel for plaintiff.  *See* FAC ¶¶ 45-55.

The FAC asserts ten claims.  Count I is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), against Gray, Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Count II is a claim for statutory conversion under Mich. Comp. Laws § 600.2919(A) against Gray, G. Gottschalk, J. Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF; Counts III and IV are claims for fraud and fraud in the inducement against Gray, G. Gottschalk, S. Westman, Cree, Dalaly, FIEC, FIEG and HRF.  Count V is a claim for breach of contract against GSBD, FIEC and FIEG.  Count VI is a claim for common law conversion against GSBD, Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel, Dalaly, FIEC, FIEG and HRF.  Count VII is a claim for breach of fiduciary duty against Dalaly, FIEC, FIEG and HRF.  Count VIII is a claim for common law conspiracy against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, C. Westman, Scottfuel,  Dalaly, FIEC, FIEG, HRF,

3

and GSBD.  Count IX is a claim for common law concert of action against Gray, G. Gottschalk, Cree, J. Gottschalk, S. Westman, Dalaly, FIEC, FIEG, HRF, and GSBD.  And Count X is a claim against all defendants for certain equitable relief.

In addition, FIEC, FIEG and Dalaly ("the Dalaly parties") have filed a cross claim[2] against G. Gottschalk, J. Gottschalk, GSBD, Gray and the Gray Trust, asserting a RICO claim [docket entry 40].  The Delay parties allege that the cross claim defendants perpetrated the fraud against plaintiff as alleged in the complaint (but without the Delay parties' knowledge) by, among other things, "deceiving FIEC into unwittingly participating in the transfer of funds belonging to the Plaintiff in this matter."  Cross Claim ¶ 11(b).

***Gray's and GSBD's Motions for Dismissal of the Crossclaim or for a More Definite Statement***

Gray, individually and as trustee of the William Gray Trust, and GSBD seek dismissal of the crossclaim pursuant to Fed. R. Civ. P. 12(b)(6).  In deciding a motion under this rule, the Court must

> "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And, "[a] claim has

---

[2] It is unclear whether this cross claim is filed by FIEC alone (as indicated in the caption, which identifies FIEC as the "Cross Claim Plaintiff") or by the Delay parties (as indicated in the body of this pleading on pages 2, 30, 31 and 33).

4

> facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

Gray and GSBD argue that the sole claim asserted in the crossclaim, under RICO, should be dismissed because it fails to allege a pattern of racketeering activity, the crossclaim is improper as it does not clearly arise from the same transaction alleged in the complaint, and FIEG lacks standing because it does not allege it had any interaction with the crossclaim defendants.

The first argument is clearly correct and it is dispositive. "[T]o state a RICO claim, [plaintiff] must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006), *quoting Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). As explained by the court of appeals in *Moon*, a RICO pattern

> consist[s] of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1).
>
> \*   \*   \*
>
> Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because § 1961(5) "assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *H.J.*, the Supreme Court held that "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern." *Id*. at 239, 109 S.Ct. 2893 (internal citations omitted). "Continuity and relationship constitute

> two analytically distinct prongs of the pattern requirement." *Vild v. Visconsi*, 956 F.2d 560, 566 (6th Cir.1992), *cert. denied*, 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59 (1992).

465 F.3d at 723-24 (emphasis in original).

Predicate acts are "related" for RICO purposes if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 724, *quoting H.J., Inc.*, 492 U.S. at 240. The predicate acts must also have sufficient "continuity," meaning they must represent "either . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Moon*, 465 F.3d at 724, *quoting H.J., Inc.*, 492 U.S. at 241. To allege "closed period" continuity, plaintiff must show that the predicate acts took place "over a substantial period of time" because RICO is concerned with "long-term criminal conduct." *Moon*, 465 F.3d at 724, 726, *quoting H.J., Inc.*, 492 U.S. at 242. To allege "open-ended continuity," plaintiff must "plead[] facts suggesting the threat of continued racketeering activities projecting into the future." *Moon*, 465 F.3d at 726. This may be plead "through facts showing 'a distinct threat of long-term racketeering activity,' or by showing 'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Moon*, 465 F.3d at 727, *quoting H.J., Inc.*, 492 U.S. at 242.

> In the present case, the crossclaim makes the following relevant allegations:
>
> 8. The enterprise, for purposes of this Cross Claim, is the same as the enterprise alleged by the Plaintiff in the original complaint in this matter, and identified in this Cross Claim as GSBD Associ[]ates, fka GSB Associates.
>
> 9. Each of the Cross Claim Defendants participated in the conduct of the enterprise's affairs as follows:

6

    a. Cross Claim Defendant, Garth Gottschalk, allegedly represented that he was an Executive Vice President of FIEC, and further represented that HIS OWN company, GSB Associates, had a credit line of $500,000,000.00 with FIEC.

    b. Establishing an "escrow account" into a client trust account that had been created in the name of FIEC so as to lead FIEC into believing that certain funds were being deposited on behalf of the "Arrow Air" transaction referenced above, and then changing the "escrow account" into some other unaffiliated account so as to preclude any control over, or access to, those funds.

    c. Allegedly using the appearance of a law firm's control over a client trust account, with which the Cross Claim Defendants had no affiliation, to perpetuate a fraud upon the plaintiff and possibly others yet to be discovered.

10. The enterprise was used to allegedly perpetrate a fraud upon the Plaintiff in this matter, and the Plaintiff was allegedly defrauded.

11. The Cross Claim Defendants conspired to perpetrate, and did in fact perpetrate, illegal predicate acts, including, but not limited to mail and wire fraud pursuant to 18 U.S.C. sec. 1341 and 1343 in the following manner:

    a. Submitting via U.S. mails and via private or commercial interstate carriers fraudulent monthly invoices to the Plaintiff and others;

    b. Submitting to Dhafir Dalaly and FIEC statements leading Dalaly and FIEC to believe that money had been deposited by "Arrow Air" into the client trust account, and that said money was to be paid out to "Arrow Air" and that it was in fact being paid out to "Arrow Air" in accordance with the "Arrow Air" transaction, and thereby deceiving FIEC into unwittingly participating in the transfer of funds belonging to the Plaintiff in this matter.

    c. Issuing a fraudulent bank comfort letter on FIEC letterhead;

12. Each of these predicate acts was part of a scheme or artifice to defraud the Plaintiff, the Cross Claim Plaintiffs and others, and the

> Cross Claim plaintiffs were in fact deceived thereby.
>
> 13. As a direct and proximate result of the Cross Claim Defendants' racketeering activity, the Cross

Crossclaim ¶¶ 8-13.

Assuming the crossclaim alleges a sufficient number of related predicate acts, it clearly does not allege that the acts are sufficiently continuous to satisfy the pattern element of a RICO claim. A closed-ended period of continuity is not alleged because the predicate acts occurred over a relatively short period of time and because they all relate to a single fraudulent scheme. The dates the predicate acts occurred are not alleged, but the acts alleged in the complaint – beginning with Gray telephoning plaintiff's counsel in January 2009 and ending with the escrow account being emptied in May 2010 – span a 16-month period. The predicate acts alleged in the crossclaim must have occurred during this period.[3] While there are no rigid rules regarding what amounts to "a substantial period of time," racketeering activity lasting only "a few weeks or months and threatening no future criminal conduct" is insufficient. *Id.* at 242, 109 S.Ct. 2893; *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.1994), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130

---

[3] In fact, it appears the Dalaly parties allege that the earliest predicate act occurred sometime after the escrow account was established, and that occurred in July 2009. *See* FAC Ex. 1(A). Therefore, the time frame during which the predicate acts occurred, as alleged by the Dalaly parties, was considerably shorter than that alleged in the FAC, and perhaps as little as seven to ten months. The "bank comfort letter" alleged in ¶ 11(c) of the crossclaim is dated September 23, 2009. *See* FAC Ex. 2. It also appears that the Dalaly parties, in an effort to explain why a pattern of racketeering activity has been pled, rely entirely on the relevant allegations in the FAC. *See* Dalaly parties' brief [docket entry 78] at nn. 1, 2, 5, 7, 8 and 10 (indicating the Dalaly parties "rely upon" arguments made in Kalitta's response to Gray's motion to dismiss). In an earlier opinion in this mater, the Court found that the complaint fails to allege a pattern of racketeering activity by Gray, G. Gottschalk, Cree, S. Westman, Dalaly, FIEC, FIEG and HRF. This conclusion applies even more forcefully as to the crossclaim, which alleges far fewer predicate acts over a shorter time span.

L.Ed.2d 495 (1994) (predicate acts over 17 months did not satisfy the closed period analysis); *Vild*, 956 F.2d at 569 (predicate acts over six or seven months not sufficient under closed-period analysis). *Moon*, 465 F.3d at 725. In *Moon* the court of appeals found that continuity was not sufficiently alleged although the predicate acts occurred over a period of two and one-half years:

> [E]ven if the racketeering activity lasted for two-and-a-half years, as Moon insists, facts establishing a closed period of continuity are still lacking. Moon has pleaded that the Defendants embarked upon a coordinated scheme to wrongfully terminate his workers' compensation benefits. All of the predicate acts-the mailing of the Notice and Second Notice cutting off his benefits and the mailing of Dr. Ray's fraudulent medical report-were keyed to Defendants' single objective of depriving Moon of his benefits. No other schemes, purposes, or injuries are alleged, and there are no facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating Moon's benefits. In circumstances such as these, the purported racketeering activity does not bear the markings of the "long-term criminal conduct" about which "Congress was concerned" when it enacted RICO. *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

*Moon*, 465 F.3d at 725-26. The same line of reasoning has led courts routinely to dismiss RICO claims for failing to sufficiently allege continuity when the predicate acts have taken place over a similarly limited period of time. *See Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 2012 WL 933289, at **8-9 (E.D. Mich. Mar. 20, 2012) (single scheme perpetrated over an eight-month period deemed insufficient); *Bocanegra v. Stacey*, 2011 WL 4448979, at *5 (E.D. Mich. Sept. 26, 2011) (10 months); *Douglas v. Ratliff*, 2009 WL 3378672, at *5 (S.D. Ohio Oct. 20, 2009) (13-1/2 months); *Mangrum v. Kebede*, 2006 WL 3151546, *4 (W.D. Tenn. Nov 1, 2006) (11 months). Similarly, no closed-ended continuity is alleged in the present case, which involved a single fraudulent scheme that was carried out over at most a 16-month period.

Nor does the crossclaim in the present case allege open-ended continuity, i.e., a

distinct threat of long-term racketeering activity." *H.J., Inc.*, 492 U.S. at 242. Rather, just as in *Moon* and the other cases cited above, the scheme alleged in the present case was a "one shot deal." The crossclaim defendants allegedly conspired to trick the Dalaly parties into "unwittingly participating in the transfer of funds belonging to the Plaintiff in this matter." Crossclaim ¶ 11(b). Having been carried out, the scheme is over and there is no plausible threat of on-going wire fraud, mail fraud or other racketeering activity. That is, plaintiff alleges defendants perpetrated

> an inherently terminable scheme—a pattern of racketeering activity with a built-in ending point—that has prevented this court from finding open-ended continuity in the past. *Vemco*, 23 F.3d at 134 (finding no open-ended continuity where only a single scheme to defraud one plaintiff the cost of one paint system was pled); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir.1992) (finding the plaintiff had failed to plead open-ended continuity when "the acts alleged amount[ed] at best to a breach of contract with a single customer"); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir.1991) (finding that there was no open-ended continuity because the defendant's fraudulent scheme to sell nineteen lots of land was "an inherently short-term affair" that would end once the lots were sold).

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 410-11 (6th Cir. 2012). As in these other cases, the scheme in the present case had a "built-in ending point," namely, when the escrow account was depleted.

For these reasons, the Court concludes that the crossclaim fails to allege a pattern of racketeering activity. Accordingly,

IT IS ORDERED that Gray's and GSBD's motions [docket entries 57 and 58] to dismiss the crossclaim are granted.


                                        S/ Bernard A. Friedman_____
Dated: June 27, 2013                    BERNARD A. FRIEDMAN
       Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE